Good morning. May it please the Court, Robert Mullen on behalf of the plaintiff and appellant Hazel Koschel. I tried twice. I didn't get it right either time. Koschel. Koschel. She's not here in the courtroom, so I don't think she'd be offended by a mispronunciation. Just as an initial proposition, can you tell us whether she started suit against the BLM? The suit, there is currently no lawsuit on file against the BLM. There is a claim. We have used the claim procedures to ask for reconsideration of the claim, which was denied several months ago. So the timeline now is that in approximately six months, the Department of the Interior must respond as to whether it grants or denies her claim. And so that is, in effect, stayed. And she may file suit against the BLM six months from now if the claim is denied. Well, she could file now, couldn't she? I'm not sure what the answer to that question is. There's been a denial of the claim. There has been a denial. I do believe to exhaust remedies, do you have to ask for reconsideration of the denial of the claim? I believe you do not. So you could file the lawsuit? Yes. Yes. But, in fact, you have asked for reconsideration. We have asked for reconsideration, and, frankly, we require discovery, the type of discovery that the district court here would enable through the issuance of subpoenas in order to depose persons most knowledgeable at the BLM, in order to gain access to documents, in order to make a determination whether what the defendant CBE says is true, that, in fact, the CBE did not receive adequate warnings of the perils of a hike along this North Coast shoreline that took these several lives. The primary target here on the part of Ms. Cashel is the CBE. She believes that these deaths resulted from negligence of the CBE. And the BLM is a potential, it's a potential third-party defendant, and it's a potential second defendant. But at this time. Well, in some ways, your claim against the BLM is in tension with your claim against the CBE, because if the BLM was sufficiently extravagant in its claims of safety or in failure to disclose, that in some ways absorbs the board. If they reasonably relied on either the statements or the omissions of the BLM, if the CBE relied reasonably on statements or omissions by the BLM, that sort of absolves them of liability. We believe that's the position that the CBE will probably take at the trial of this case, wherever the trial is. Every opportunity it has had to comment publicly on the reasons for this catastrophe has involved reference to its, I'm sorry, reference to the BLM's failure to fully advise it by way of posted signs at trailheads around the beach, by way of literature given to the CBE, by way of phone discussions, to fully advise it of the perils here. And certainly that poses a complication in the forum nonconvenience analysis, which wouldn't otherwise exist. Well, the district court dismissed this case on the forum nonconvenience doctrine. The standard of review poses a very high hurdle in front of you, abusive discretion. Did the district court make any errors of law in making its decision? Or is it just an error in judgment in applying the doctrine? It did make some errors of law. For instance, the district court decided that it did not need to consider the choice of law issue before deciding whether this case should be dismissed under forum nonconvenience. But our position is most of the error committed by the district court is application of facts to law. The district court looked to the fact that both parties are from Calgary and looked to the fact that there are a number of potential Calgary witnesses and on that basis determined that the overwhelming weight of the evidence is located in Calgary. In fact, the evidence in Calgary is for the most part controlled by the parties, if not generated by the parties themselves. Well, no, not entirely. I mean, the students aren't controlled by anybody. The parties are one parent, right? Yes. One parent. My client is a parent. Parent, right. It's not a group of parents or anything else. And on the other side is a school board who would have controlled the adults present on the trip, or will control, which I don't know. There were other chaperones or factors or whatever they're called. Presumably all employees of the school board? Yes, that's correct. And then the most, I would imagine, the most number of witnesses would be students, and those don't sound to me like they're controlled by either side. Your Honor, there were approximately ten students in the group in which this catastrophe occurred. However, there is little dispute in the evidence as to what actually occurred on the beach. That is not the focus of the dispute here. The focus of the dispute is the foreseeability of the risk of harm to the CBE in engaging in this hike on this beach at the time when a vicious incoming tide was coming in, pinning this hiking group against the cliffs. And the evidence – I don't mean to interrupt, Your Honor. Counsel, I'm a little disturbed by this language about control. We expect the witnesses to testify truthfully as to exactly what the planning was, who said what to whom, what was done, what investigation was made. And in a trial of that sort, the jury is likely to infer that these may be witnesses that are a bit partisan to the school board and to weigh that into their determination of the facts. That's certainly correct. But, Your Honor, I'll point out this is not a jury trial. This would be a bench trial before – Well, even so, you would expect the fact finder to –  I'll point – But you've got the problem of forcing witnesses to move across the border for trial. You can't force the students to come to California for trial, just as you can't force the U.S. witnesses to come to Calgary for trial. You can take their depositions, Your Honor, and you can take their depositions by sound and video under the recently revised Federal Rule of Civil Procedure 30. Our position is that the forum nonconvenience analysis, the private factors, as applied by the Court below, is anachronistic. The reality of trials today, in particular bench trials,  their testimony is often presented by way of deposition excerpt. In particular now, by video, by sound. How exactly would this happen? Let's say that the district court here had retained jurisdiction. Let's say we reverse and say that the trial must be held here. And then it turns out somebody wants to take one of these depositions for, let's say, one of the students. I understand that the teachers can be forced to come here or can be forced to be deposed. How do you force a student to testify in a proceeding that's not – where you get a lot of rogatory? How exactly would this work? You cannot. But letters rogatory can be issued by the district court permitting the deposition of third parties. And this would be taken to QB in Calgary? How does this work? Yes, it's – the procedure, in fact, is discussed in a recent Second Circuit Court of Appeal case named Di Rienzo, which is in the papers, in which the court discussed the procedure with respect to Ontario witnesses, third-party witnesses, of issuing letters rogatory. I'll point out that if this case were venued in Alberta, no depositions of any third parties could take place according to Alberta procedure. No depositions of any California witnesses, of any third-party witnesses in – What's the difference between a deposition and a commission to record trial testimony? A commission to record trial testimony, number one, cannot actually force a United States entity, in particular a government entity, to cooperate. It's an allowance to the parties to go abroad and to actually preserve trial testimony according to very restricted trial objections, including relevance. And all the information taken is presented as trial testimony. Now, we believe that – we need discovery in California just to see who the witnesses are that we would try to do this difficult procedure with. And as a secondary matter, we're not confident we'd be able to get any testimony from California under that. Isn't it sort of a big dispute here between a Alberta-based plaintiff – Calgary, right? A Calgarian plaintiff parent having disputes with her child's school board about whether a school trip was properly supervised or properly – the dangers of the trip. And isn't that a dispute that concerns no one more than Alberta? I mean, if we sort of apply a government interest analysis or – and furthermore, the whole idea of what representations were made, what inquiries were made, all that stuff would have happened from Calgary. So why isn't Alberta really the jurisdiction? Because the California evidence shows what information the Board of Education could have gotten if it had tried to. It would be testimony from BLM representatives about signs posted, about literature, about warnings in literature, about information available regarding surfs, regarding tide, regarding weather that this group apparently did not see fit to obtain before or during this hike. And it is the evidence which bears upon the foreseeability of the risk. Why are you unable to attain that informally? I mean, you seem to say the only way we can get that is to use the obligatory tools of the Federal district court. It seems to me that there's also a probability that most of the information you just described would be obtainable without having to go to Federal court. I mean, that's all public information, most of it, that you're talking about. Your Honor, that's a good point, and some of it is available publicly. But what is not available is actual witness testimony. Someone taking the stand, someone appearing for a deposition. Do you know what witness testimony you're after, or are you just fishing? We know some of the witness testimony we're after. We're after witness testimony which specifically goes to the presence and content of warning signs at trailheads and on the beach, which the Board of Education has publicly stated did not exist, and so it did not see at the time. And there is, in the publicly available information, it is not clear what exactly or the state of the warnings was at that time. And we are after the testimony of BLM representatives who had conversations with the Calgary Board of Education. Excuse me for interrupting, but it seems to me that you're simply asking us to reweigh a decision made by the district court. And as far as I read the cases, the cases say that if the district court has considered all the factors that we tell the district court to consider that relate to this doctrine, that then you have to show us that this is a clear abuse of discretion, not just that the district court arguably is wrong, was wrong, or that another judge might have done something differently, but you have to show a clear abuse of discretion. Now, the reason why I ask if there were any errors of law, of course, is if there's an error of law, a significant error of law, then that could amount to an abuse of discretion. But here, even in the choice of law, the district court said, under these circumstances, I don't have to consider this. If I were to, I'd probably choose Alberta law. But so why is this a clear abuse of discretion? It seems to me the district court looked at all the things that you're looking at and came to the conclusion that it did. Well, courts consider an abuse of discretion in the context of foreign nonconvenience to be when the district court improperly weighs the factors, in addition to misconstruing them. But if you improperly weight, as Judge Kaczynski points out, this is primarily a dispute between the Canadian parties. And it's not at all clear to me that you have an inadequate forum in Canada. To the contrary. In Canada, what that forum allows is depositions of parties only, no third parties. In Canada, my client cannot even take the deposition. It seems to me, though, that you're running around the hair on the tail of the dog rather than examining the gravamen of what this is all about. And it appears to be a dispute between Canadians about something that happened in Canada. Well, Your Honor, it is. Accident, of course, was here. But the negligence and the failure to prepare and all that, a good measure of that happened in Canada, if it happened at all. Your Honor, the crux of the negligence happened in California. It was the election of the trip leader and the chaperone to proceed along a beach where incoming surf was crashing against, you know, the cliffs they were hiking along. It was the chaperones exposing herself to danger. And those are all people who are currently in Canada. They are, Your Honor. I will – the fact of the matter is we get one side of the story from the CBE. We want the other side of the story. The other side of the story comes from BLM representatives. It comes from Coast Guard representatives who can talk about other drownings which occurred in this vicinity of which the public and officials had to have been contacted new. Is there any reason why you didn't just go ahead and sue BLM rather than ask for reconsideration? Yes, Your Honor, because our case against the BLM would depend on obtaining information through subpoena, through testimony. Our case against the BLM is not as strong as our case against the CBE. Had this case proceeded without being dismissed, it certainly would have made sense to join the BLM as a defendant to solve the empty chair problem, which was clear from the CBE's public statements, that there would be an empty chair problem. But given that the district court dismissed this case, given the uncertainty of this appeal and given the fact that we can still join the BLM should we prevail on this appeal, it makes sense to wait for the outcome of this appeal to bring in the BLM. See, what I'd like to hear you say, and maybe it doesn't exist, is that by forcing this case back to Canada, this deals a death blow to the ability of your clients to pursue this lawsuit. And I hear a lot of maybes and can't-be-sures and mights and all that, but where is this going to ax your cause of action by having sent this back to Canada? What's the death blow here that makes this a clear abuse of discretion? It makes it very difficult for my client to do. Very difficult or impossible? I don't want to give the case away if this Court doesn't reverse the Court below. It does not make it impossible for my client to prevail. It makes it very difficult. It makes it unfair to my client. Civil jurisprudence in America, you know, is predicated on each side being able to discover the relevant facts and present evidence, present a full picture to the trier of facts. My client will not be able to do that in Alberta. Canadians live with this. I mean, they have their own system of procedure, which they consider to be fair. You know, this is not a case where they use entrails of dead birds to figure out what the truth is. They have a system not that different from our own, and we may think ours is better, but I think they probably look to us and say, gee, these Americans, our system is better. Anyway, we are way over your time. We'll hear from those sides. May I make one final point that was not fully addressed in the papers? Go ahead. Okay. The standard for determining whether to grant a motion under forum nonconvenience has been clearly stated three times by the United States Supreme Court and was recently restated by this Court in September of last year in the Dole Foods case, and that is that the motion should be granted only if the case being the plaintiff's choice at the forum imposes such oppression and vexation on the defendant as to be out of proportion to the plaintiff's convenience, which itself is shown to be slight or nonexistent, nonexistent. This is more than a matter of the plaintiff having convenience in the Northern District of California. It is essential for the plaintiff in order to develop the evidence in this case to be venued in the Northern District of California. And any oppression or vexation, those are very strong words, which may be imposed on the defendant is also suffered by the plaintiff in this case. There's an even playing field. They're both coming from Canada. It's the plaintiff who must take depositions of the defendant's representatives in Canada. I think it's more of the same. Thank you. Thank you. We'll hear from the other side. Morning, Your Honors. Edward Clifford. May it please the Court, appearing on behalf of Calgary Board of Education. Going to school in Calgary is a hazardous activity these days, isn't it? It's a hazardous activity. How many school children do you guys lose a year? Not many. Lost a bunch this year on these school trips. They have a very active outdoor education program. Not a very careful one. Well, I think they did a very adequate job. Sometimes these things happen. Maybe it's a little more aggressive. I know they're examining their program. That's why this case is of very great interest in Calgary. The plaintiffs tried to make the argument that the interest is more in California, and Judge Oreck said, absolutely not. As their own papers showed, the people up in Calgary. He gave over the fact that in less than six months, there's going to be a case. I mean, assuming the BLM does what he always does, which is deny the misdemeanor claim, you're going to have a lawsuit going here, an FTCA lawsuit. And so if we don't reverse the district court, you're then going to have two lawsuits. Probably going to be involved in two lawsuits, one here, one there, with all the risks of duplicative procedures, of inconsistent results, with witnesses having to testify twice, the inconvenience, and so on. That seems to me as a pretty strong consideration. I think the answer to that, Your Honor, is that they never intend to bring the BLM into this case. How can you say that, counsel? Because they filed, Your Honor, in Humboldt County, where they knew they could never get jurisdiction on the BLM. It had to be filed in federal court if they're going to sue the BLM. There's not one charging allegation in their complaint against the BLM. I think even today, Mr. Mullen said, you know, they're just doing it as a defensive mechanism. They don't really think the BLM did anything wrong, or they would have sued them before. And they didn't. That's why I think they're even going back in for reconsideration, even when they could sue them now. This happened. They decided to sue the BLM, or to file a claim against the BLM, almost two years after the accident occurred, and only after the Calgary Board of Education indicated they were going to move for a change of venue back to Canada. This happened after a mediation in Canada, before a retired appellate court justice in Canada. And the case didn't settle. And the BLM, or rather the CBE, said, we're going to move to get the case back to Canada where it belongs. And they said, we're going to thwart you by filing a claim against the BLM. And I think Judge Orrick properly said, this is something that's six, eight months down the road, if it ever occurs. And I've got to look at what's before me now. And I think he considered all of the factors, the fact that they had sued up in Humboldt County, where they knew they couldn't get jurisdiction on the BLM. They never would have sued them because they couldn't sue them up there. Only we removed it under the Foreign Sovereign Immunities Act to federal court. Well, now here you are. Sometimes what you do is you educate your opponent. And now you brought the case in front. They clearly could bring an FTCA claim and join the BLM in this case. There's no doubt about the fact that they could. Is there? I guess they could, certainly. As you say, as I said before, there's a long delay. I'm not so hesitant in this view on that. I think you just don't want to admit it. You just hate to admit it because it hurts you. But the BLM — What are you saying? No, we addressed — They definitely could. We addressed the BLM very clearly in our briefs and in the underlying — It addresses now the argument. I mean, you start with a proposition, which you seem to want to dispute somehow, but I don't know how you're disputing it other than sort of saying, gee, it won't happen. You know, I'm not prepared to admit this. But the fact is they could bring in the BLM and join them in this lawsuit if we leave it here, right? Is there any doubt about that? They could bring in the BLM. They haven't done it. If they bring in the BLM, as we pointed out, they themselves don't indicate they have a case against the BLM. Should we defer submission in this case and wait to see what happens with the BLM? I don't think that's appropriate, Your Honor, because I think the — I mean, if all of a sudden we're going to open a war on two fronts here, why shouldn't we wait to see what we're in before we make a final decision? I just think, again, these are matters of, I suppose, discretion. The Court determined below that they hadn't done it in two years. I think Judge Clark is asking whether we should exercise our discretion to withhold submission long enough to find out whether this important fact occurs. And why don't you try to persuade us about how to exercise our discretion? Well, again, I think that the — there's no question that they could file a suit against the BLM. They still haven't done it. They've moved for reconsideration. I don't know. What does it make to have lawsuits in two countries going at the same time? The only answer I can give you to that is that I think they do not have a case against the BLM. I think the BLM is going to get out if they do sue them. And then if we were still in this case, we'd only have to move at that point a year down the world, whatever it may be, to move back to Canada. You say that they have a case. I saw that in your brief, but I didn't quite follow. Why don't you explain it to me sort of in plain English? Why don't you think they have a — if what they say is true, that the BLM knew of this condition and failed to warn, and, in fact, encourage people to use the park for hiking when it knew that people get washed away by the incoming tide on a regular basis, why wouldn't there be a case? Now, the BLM probably will dispute this, but that's why we have lawsuits. We see those kinds of cases all the time. Well, we have cited the Pacheco case, the — Well, Pacheco doesn't help you. And this was not supposed to be a swimming case. They were not going swimming. They happened to wind up in the water because the water came up onto dry earth to fetch them. They didn't — The BLM knew that, and this has happened before, and it failed to warn people, encourage schools and to take their students there, knowing that this could happen. I mean, I certainly don't want to prejudge that case, but it sounds to me like that's at least a plausible case. What does Pacheco have to do with it? Pacheco is a very different case than this. Pacheco — You cited it. I know we did. Because I think it's favorable to us. Even though the holding — Pacheco, they had — it was a beach that was encouraging children to swim, and they had — they provided pails for the children to get into the water, et cetera. However, this is a case where nobody is invited to swim, and it's simply the duty — I'm sure you put that in the brief and you're repeating it today. This was not a swimming case. This is not a case where they go and say, oh, this is nice, we'll go in. They were walking along, as I understand it, and a big wave comes and pulls them into the water. This is not — the analogy is not that people were invited to swim. This is the question is whether they were invited to walk along this path that the BLM thought or knew was dangerous. Now, again, I don't want to — you know, they're not here to defend themselves, but it doesn't sound to me like such a far-fetched case as you make it out to be. And Pacheco is totally different. And if Pacheco had these facts, the Court and the principles that they enunciated would have held for the BLM or for the whoever — it was a private company there, even. This is simply a — here it is here. The Ninth Circle has determined that all California cases involving the Pacific Ocean have held that a defendant has no duty to warn the plaintiff of the dangerous conditions of the ocean beyond their private beach. The Swan v. Oliver case, Princess Hotels International, those are California cases. But what happened in Pacheco is that there was the encouragement to go into the water, which led the Court to its holding, to its finding. The problem with all of this is it seems to me that we'd have a different situation if the BLM were in this case. There'd be a very heavy thumb on the scale. And we don't know whether we're going to have the BLM in this case, and we might. So it seems to me, as I indicated earlier, that it might be a prudent thing to wait and see whether the BLM comes into the case, because do you concede that it would alter the equation substantially if you had a defendant who was going to have to answer in federal court already? If the — yes, Your Honor, I do. So it just seems to me that if the — and we don't know whether the BLM is going to win or lose or get out on summary judgment or what. But if the BLM is going to be in the case, it seems to alter the weighing of the factors under form of inconvenience and would require a re-weighing if BLM is in the case. But I think that Judge Oreck was within his discretion to say and to look at the circumstances where they didn't sue the BLM, made no charging allegations against the BLM, and two or three days before we filed our motion to inform nonconvenience to dismiss is when they only start thinking about the BLM. Like chess, you move this way and I move that way. It was clearly a tactical decision in my opinion. To turn your attention to something else, as between Calgary and California, what evidence and what witnesses can be brought in in each forum? In California, according to their — which witnesses are in each jurisdiction? You have in California something like over 50 — I'm sorry, not California. In Calgary, the parties all resident to Calgary, the witnesses, the vast, vast majority of them. I'm not thinking so much about the facts, but what's the law as to depositions, as to the subpoenaing of witnesses in each jurisdiction? I want to know that. I don't think it's that much different. As the plaintiffs like to say, it's more restrictive in California — in Canada. Elaborate. What does more restrictive mean? That they have to somehow get a commission? I don't think it's any more restrictive, really. Well, I mean, he says yes, you say I don't know. I mean, can you give us that? No, no. Well, going by what they said and what the judge in the lower court found, that there clearly is — Well, I want you to tell me what the law is in Calgary and what the law is in California. In both — in both jurisdictions, you can get pretrial testimony that can be used in the trial of the case, Canada as well as California. Are there some differences? Yeah. What are the differences? Well, I don't think there are any differences other than, according to the plaintiffs, that there are some restrictions, that it's more of a trial as opposed to trial testimony, is what they say. Johnson, you haven't looked into this, and you really don't know. Well, we're — Criticizing you. No. You don't know. No. I mean, our people in Canada tell us it's essentially the same. I can't say what's — Essentially. I can't say with specificity that every single aspect of the California discovery law is the same in California as it is in Calgary. What you're saying just sounds like fog. I mean, we want to know what the differences are, and you're unable to tell us. The other side says something, and people in Canada say more restriction, but essentially it's the same posture. Judge Oreck accepted what they said the California procedure was, and he said that that was adequate. When you're looking for an adequate form, you don't necessarily take — Oreck accepted what the Canadian procedure was and said that was adequate? Yes. And he said that that was certainly adequate to preserve testimony. And when you look at the cases and all those cases that have found Canada to be an adequate form, you're not getting it down into that detail of saying, well, hearsay applies or it doesn't apply or whatever. It's an adequate form to preserve testimony. It's an adequate form for the case to be tried in. And primarily what the Supreme Court said was — Yeah, but you're dealing cross-borders here. That has something to do with this, doesn't it? Accessibility to witnesses, a commission to take trial testimony. When a Canadian court issues a commission to take trial testimony, to whom does it give that commission and say, go take this testimony in San Francisco or Humboldt or wherever? I don't know the answer to that question, Your Honor. I know that they can do it. And, again, let me talk about what happens when somebody brings one of these commissions over here and serves it on somebody, on a supposed object of the commission. What if they say, ha-ha, this has the Queen's name on it, and we don't respect the Queen in this country. Go away. What happens at that point? I'm sure the — I'm sure means you're not sure. Well, what happens? It's — they can take the testimony down here. They themselves admit it. Well, they can take it. What do the parties say? Just like the same thing if a California court issues a commission to take it in Canada. Witnesses, I'm not answering your questions. Go away. I don't know who this Queen is. Well, I think there are treaties between the two governments. Or there are. There are. I can't tell you the name of the treaty, but there are. You file this under some kind of international full faith and credit with a federal district court in San Francisco, and they send the marshals out to give you the full imprimatur of the federal district court to tell the witness either take this, either answer these questions or you're going to be held in contempt of federal court. I mean, is it something like that? That's — yes, Your Honor. I think it is. What happens on the way is we issue a letter of erogatory. I know what our courts do. The district court issues a letter of erogatory. The letter of erogatory then gets taken to the local court in the foreign jurisdiction, be it Alberta or Japan or wherever, and the local court is then — it's a request to the local court to issue its own writ to compel the testimony of the witness. And that's how it works. Right. So if the local witness then says, I don't want to respect it, usually they send the Mounties out and put him in jail. Right. So that's how it works. Well, what Judge Todd is trying to find out, which I guess he's not going to because you don't know the answer, is what happens the other way around? Do these commissioners — can they be enforced in our courts? The answer is you don't know. The reason we're interested is because all of a sudden this lawsuit is going to go to Canada, and I want to know whether this is dealing a death blow to the lawsuit because of some procedural complication that disables that side from Canada to get information from the United States. This has never come up as an issue. Otherwise, I'm sure the plaintiffs would have said it's not going to work in Canada because Canada doesn't respect the United States. But I refer to the exercise of discretion of the district court when neither the district court, neither — and apparently neither of the parties happen to know the answer to these sort of fundamental questions. The plaintiff never said, which might have affected Judge Oreck's decision, that we cannot get this done in California. They said there is the procedure, and it would presumably work. Can I address one thing, Your Honor, because we're talking about the difference of getting the two witnesses back and forth to Canada and here? The fact of the matter is that there is over 50 Canadian witnesses in all of the parties, and they're talking about essentially here fishermen, helicopter pilots who rescued people after these events took place, after the accident took place. And those are Canadians? No, those are Americans. The quality of the evidence, the materiality and the relevance of the respective witnesses in Canada and the United States is totally disproportionate. Everybody lives in Canada who is a material witness. Yeah, but most of those you're talking about are under the control of the school board, and the school board can make them come here. Not so, Your Honor, not necessarily. The students are gone. The parents who attended meetings and did all kinds of things with respect to planning for the trip, they're up there. The treating people for the plaintiffs, their doctors, the hospital, they're all up there. There are experts that the plaintiffs hired that gave to the Calgary Board of Education. They're up there. The only people who are down here... I found that experts will travel wherever you pay them to go. Very good. The only people down here are the after-the-fact witnesses, the fishermen, the helicopter pilot, other hikers who are not identified. And when Mr. Mullen says, and the plaintiffs say that the California evidence that's so important is whether a warning sign was up, and what would the Canadians do? They saw the conditions of the beach that day. These are California people. That's not so. These are the students and the chaperones and the people from Canada, the parents who were down here hiking. They're the ones who saw the conditions that day. They saw the warning signs.
judges: B.fletcher, Kozinski, Trott